### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**PHILLIP LEX BAKER**                              **CIVIL ACTION**

**VERSUS**                                         **NO:  13-6447**

**SOCIAL SECURITY ADMINISTRATION**                 **SECTION: "R"**

### REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of the Social

Security Administration ("the Commissioner") pursuant to Title 42 United States Code § 405(g).

The

Commissioner denied Plaintiff, Phillip Lex Baker's ("Baker"), request for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 and for Supplemental

Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title

28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

## I.     Background

Baker is a fifty-seven-year-old,[2] 6'1", 191 pound male with two years of college education.[3]

Baker has past relevant work experience as a school cook, a steward and cook, and as a short order

cook.[4]

---

[1]*See* Rec. Doc. No. 1, p.1.

[2]*See* Rec. Doc. No. 9-6, Tr. 200.

[3]*Id.*

[4]*Id.* at Tr. 207.

Baker alleges that he became disabled on October 1, 2010 due to high blood pressure, diabetes, heart condition, sleep apnea and difficulty breathing.[5]  His date last insured is December 31, 2014.[6]

Baker filed for a period of disability and DIB under Title II, and SSI under Title XVI of the Social Security Act, on February 22, 2011 and February 28, 2011, respectively.[7]  All claims were initially denied on September 28, 2011.[8]

Baker filed a written request for hearing on October 24, 2011.[9]  Gerardo Perez, the Administrative Law Judge ("ALJ"), held a hearing on May 10, 2012.[10]  The ALJ denied Baker's claims finding that he was not under a disability from October 1, 2010 through June 29, 2012, the date of the opinion.[11]

In his decision, the ALJ analyzed Baker's claims pursuant to the five-step[12] evaluation

---

[5]*See* Rec. Doc. No. 9-6, Tr. 200.

[6]*Id.* at Tr. 255.

[7]See Rec. No. 9-5, Tr. 161-67, 168-74.

[8]*See* Rec. No. 9-3, Tr. 77-85, 86-94.

[9]*See* Rec. Doc. 9-4, Tr. 116.

[10]*See* Rec. Doc. 9-2, Tr. 15.

[11]*Id.* at 23.

[12]To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)).
    First, the claimant must not be presently working at any substantial gainful activity. *Id.* Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* (citing *Crowley*, 197 F.3d at 197-98). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.*; *See Villa v.*

process used to determine whether a claimant is "disabled." Using this process, the ALJ found that Baker met the insured status requirements of the SSA through December 31, 2014, and that he did not engage in substantial gainful activity since October 1, 2010, his alleged onset date.[13] The ALJ further found that he suffered from "diabetes mellitus, hypertensive cardiovascular disease, asbestosis/chronic obstructive pulmonary disease ("COPD"), and history of cocaine abuse."[14] The ALJ held that Baker did not have an impairment, or combination thereof, which medically equaled the impairments listed in 20 C.F.R. Part. 404, so as to constitute a presumptive disability.[15]

The ALJ found that Baker has the residual functional capacity ("RFC") to perform medium work as defined in C.F.R. Part. 404.1567(c) and 416.967(c), with the exception that he cannot climb ladders, ropes, or scaffolds. The ALJ additionally noted that Baker can occasionally climb ramps and stairs; can stand or walk two hours at a time then has to be allowed to sit for less than five minutes to rest; can sit for one hour at a time then has to be allowed to stand and stretch for one minute; and must avoid even moderate exposure to irritants and chemicals.[16]

The ALJ found that Baker's medically determinable impairment could reasonably be expected to cause Baker's symptoms but that Baker's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent inconsistent with the above RFC assessment.[17] The ALJ noted that the medical sources diagnosed Baker with a seizure

---

*Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[13]*See* Rec. Doc. No. 9-2, Tr. 17.

[14]*Id.*

[15]*Id.* at Tr. 18.

[16]*Id.*

[17]*Id.* at Tr. 19.

3

disorder in addition to his other conditions but noted that the medical evidence did not support the claimant's allegations of physical limitations more restrictive than the RFC.[18]  The ALJ noted that the RFC assessment is supported by Baker's diagnosis of diabetes mellitus, hypertensive cardiovascular disease, asbestosis/COPD and history of cocaine abuse noted on examination.[19]  The ALJ also found that the medical evidence only showed that Baker received sporadic and isolated treatment.

The ALJ further found that Baker is unable to perform any past relevant work, noting the vocational expert's testimony that the demands of past work exceeded his limitations.[20]  The ALJ found that Baker was a person of advanced age with at least a high school education who is able to communicate English.[21]  He found that the transferability of job skills is not material to the determination of disability because he used the Medical-Vocational Rules for concluding that Baker is "not disabled."[22]   The ALJ further found that considering Baker's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Baker can perform.[23]

Baker sought timely review of the ALJ's decision with the Appeals Council on July 19, 2012, and the Appeals Council denied Baker's Request for review on July 31, 2013.[24]

---

[18]*Id.* at Tr. 20.

[19]*Id.* at Tr. 21.

[20]*Id.*

[21]*Id.* at Tr. 22.

[22]*Id.*

[23]*Id.* at Tr. 22-23.

[24]*Id.* at Tr. 6.

4

Thereafter, Baker filed the instant action in federal court, on November 19, 2013, seeking review of the ALJ's decision.[25] Baker contends that the ALJ (1) failed to properly weigh the opinions from his treating physician, Dr. Casama; (2) failed to properly evaluate his credibility; and (3) relied upon flawed vocational expert testimony.

In opposition, the Commissioner contends that the ALJ's decision in analyzing Baker's claim for DIB and SSI benefits should be affirmed because: (1) the ALJ properly discounted Dr. Casama's medical assessment; (2) the ALJ properly evaluated plaintiff's credibility; and (3) the ALJ posed a proper hypothetical question to the Vocational Expert[26]

## II.    <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v.*

---

[25]*See* Rec. Doc. No. 1.

[26]*Id.*

5

*Chater,* 67 F.3d 552, 555 (5th Cir. 1995) (citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994)). It must do more than create a suspicion of the existence of the fact to be established, and only where there is a "conspicuous absence of credible choices" or "contrary medical evidence" will no "substantial evidence" be found. *See Payne v. Weinberger,* 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger,* 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.,* No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "'[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* (quoting *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir. 1987)). The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Leggett v. Chater,*

6

67 F.3d 558, 566 (5th Cir. 1995) (citing *Greenspan*, 38 F.3d at 237).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527 (2); *see Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

Finally, "[t]he Court 'weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history.'" *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez*, 64 F.3d at 174).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

7

III.   **Analysis**

A.      **Weight to the Treating Physicians Opinion**

Baker contends that the ALJ failed to follow the treating physician rule such that his opinion is not based upon substantial evidence.[27] Baker contends that the ALJ gave "little weight" to the opinion of his treating physician, Dr. Roger Casama, and solely found that the limitations were based entirely on his subjective complaints and that there was no basis for the doctor's findings that he had limitations in handling and restrictions performing work on a sustained basis with a need for breaks and absences.[28] Baker contends that contrary to the findings of the ALJ, Dr. Casama provided medical support for his opinion and specifically relied on clinical evidence of anginal chest pain, shortness of breath, weakness, easy fatigability and diagnostic testing that included an abnormal EKG and other unspecified testing that was done at LSU.[29]

In opposition, the Commissioner contends that the ALJ properly accorded the medical assessment of Dr. Casama little weight because it was internally contradictory, confusing, and contrary to the medical evidence. The Commissioner also argues that the ALJ's decision is based on substantial evidence because he considered all the evidence and the opinions of the consultative examiners, as well as the opinion of Dr. Casama, and pointed out the numerous conflicts.[30]

The ALJ noted that Baker began treatment with Dr. Casama, an internist, on October 4, 2011. The ALJ noted that Dr. Casama followed up with him following a "heart attack" but also that the treatment notes were not legible.  The ALJ noted that Dr. Casama followed up on the same day

---

[27]*See* Rec. Doc. No. 10, p. 7.

[28]*Id.* at 8.

[29]*Id.* (citing to Rec. Doc. No. 9-7, Tr. 381-82).

[30]*See* Rec. Doc. No. 11, p. 5-6.

noting that he was  diagnosed with asbestosis exposure, COPD with exacerbation, hypertensive cardiovascular disease, type-2 diabetes, bone disorder of cartilage and osteopenia.[31]  The ALJ noted that on April 16, 2012 the treatment notes for that day were illegible.

The ALJ noted that Baker's blood pressure continued to be elevated at 147/89 and the physical capabilities assessment indicated that Baker had diabetes type-2, essential hypertension, and acute coronary syndrome with clinical findings of chest pain, shortness of breath, weakness and easy fatigability, and diagnostic findings of an abnormal EKG.[32]  The ALJ noted that Baker could sit for two hours in an 8-hour workday; stand or walk 0 to 1 hour in an 8-hour workday; frequently lift or carry up to 5 pounds and occasionally lift or carry up to 10 pounds; and  had moderate limitations in grasping turning or twisting objects with both hands.[33]  The ALJ further noted that Baker's symptoms would likely increase if placed in a competitive work environment; that he could not do a full time competitive job requiring activity on a sustained basis; that he would experience symptoms for at least 12 months; and could only tolerate low stress work with unscheduled breaks 3 to 4 hours a day for 1 hour.[34]

The ALJ further noted that the records suggested that Baker would be absent more than 3 times per month as a result of the impairments.  The ALJ also noted that he gave consideration to the assessment but gave little weight to the exertional limitations because they were based upon subjective findings and complaints.  He concluded that there was entirely no basis for limitations in handling or inabilities to perform competitive employment on a sustained basis and without

---

[31]*See* Rec. Doc. 9-2, Tr. 20.

[32]*Id.*

[33]*Id.*

[34]*Id.*

breaks or absences.[35]  Therefore the ALJ found that the medical evidence does not support Baker's allegations of disability.

The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton*, 209 F.3d at 455; *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981) (citation omitted).

For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (quoting *Martinez*, 64 F.3d at 176).

Under the regulations, a treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *Martinez*, 64 F.3d at 176; 20 C.F.R. § 404.1527(a)(2).  The ALJ must give controlling weight to the opinion of a treating physician if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"  *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a medical specialist is generally accorded more weight than opinions

---

[35]*Id.*

10

of non-specialists. *Id.* "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 175 (quoting *Bradley*, 809 F.2d at 1057).

The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176 (quoting *Moore*, 919 F.2d at 905).

According to the record, Baker underwent an impairment assessment which he relies upon in challenging the ALJ's decision. Baker contends that Dr. Casama relied on clinical evidence of anginal chest pain, shortness of breath, weakness, easy fatigability and diagnostic testing that included an abnormal EKG and other unspecified testing that was done at LSU.

However Dr. Casama's note indicates Baker had an abnormal EKG as indicated by an old record for LSU and that Dr. Casama had no laboratory and diagnostic test results available.[36] Contrary to the representations of Baker, the assessment was based solely on the statements of Baker and not based upon diagnostic tests reviewed by Dr. Casama.[37] In fact, Dr. Casama's notes indicate that the actual tests results were not available for him to review.[38] Therefore the ALJ could discount the medical opinion because it was "brief and conclusory, not supported by medically acceptable clinical laboratory techniques, or otherwise unsupported by the evidence." *Greenspan*, 38 F.3d at

---

[36]*See* Rec. Doc. No. 9-7, Tr. 382.

[37]*See id.*

[38]*Id.*

236.

Baker next contends that the ALJ was required to further develop the record on the issue of the diagnostic tests.  However, the requirement to seek clarification arises only when the ALJ finds the records inconclusive to make a disability determination. *Newton*, 209 F.3d at 455.  In this instance, the ALJ was able to make a disability finding.

Further, the undersigned has conducted a review of Dr. Casama's treating notes which are largely difficult to read because they are illegible.  Nonetheless, in reviewing the notes to the extent possible, it is clear that they contain the complaints of Baker along with the physical examination notes but no diagnostic tests results.  After considering the evidence, the Court finds that the ALJ's decision not to give controlling weight to the treating physician is  based upon substantial evidence.

### B.      Evaluation of Baker's Credibility

Baker contends that the ALJ applied the wrong legal standard in evaluating his credibility. Baker contends that the ALJ erred when he compared Baker's testimony against his own RFC rather than record evidence.[39]   Baker contends that the ALJ erred when he relied upon his own lay observations of Baker at the administrative hearing, which was over a brief period of time on a single day.[40]   Baker contends that the ALJ cherry-picked from his testimony only the limitations he found coincided with his RFC assessment and rejected other portions of his testimony without good reason for doing so.

The Commissioner contends that the ALJ's determination that Baker's subjective complaints were not fully credible was supported by substantial evidence.   The Commissioner contends that the ALJ reviewed the medical evidence and found it more persuasive than Baker's own testimony

---

[39]*See* Rec. Doc. No. 10, p. 11.

[40]*Id.* at 13.

and that the credibility determinations were appropriate.[41]

According to the record, the ALJ noted Baker's testimony in his evaluation.  He noted that Baker testified that he experiences fatigue all the time, that he has acute hypertension, stays groggy all the time, has low back pain, COPD, and diabetes, and as a result he has not been cleared to return to work as an offshore cook.[42] The ALJ further noted that Baker testified that during the day, he is groggy due to the medications and must lay down two hours. The ALJ noted that Baker testified that he can sit 60 minutes, stand/walk for 2 hours and can lift only 10-20 pounds.[43]  The ALJ further noted that Baker testified that he continues to have shortness of breath, constant coughing, and exhaustion upon climbing a flight of stairs.[44]  He also noted that Baker reported difficulty working in a restaurant due to exhaustion.[45]

The ALJ proceeded to review the medical evidence and noted that Baker was only treated sporadically.  He further noted that Baker saw Dr. Alexius for pre-employment clearance to work as an offshore cook but that he was not cleared due to a degree of left valvulvar stenosis and uncontrolled blood pressure. The ALJ noted that Dr. Alexius did not say that Baker was incapable of working in any capacity, but that he could not return to offshore work.[46]

The ALJ also evaluated Baker's medical records from LSU/HCSD Bogalusa Medical Center where he went to the emergency room with complaints of elevated blood pressure and high glucose.

---

[41]*See* Rec. Doc. No 11, p. 11.

[42]*See* Rec. Doc. No. 9-2, Tr. 19.

[43]*Id.*

[44]*Id.*

[45]*Id.*

[46]*Id.*

While his blood pressure was noted as elevated, according to the ALJ his physical examination otherwise was normal with no indication of end organ damage or headaches.[47]

Further, the ALJ reviewed the report of Dr. Sanders, in which he noted Baker's complaints, physical limitations and that Baker did not take medication for his high blood pressure. He noted that without the medication that Baker's hypertension could not be controlled. Dr. Sanders noted in the report that Baker was not being treated with medication for his diabetes and that he observed expiratory wheezing.[48]

The ALJ continued to review the record regarding Baker's complaints of wheezing and persistent coughing. However, he concluded that the wheezing was gone by the consultative examination and that Baker did not cough once during the hearing.[49]

The ALJ also noted Baker's visit with Dr. Rabito in August 2011, where he again complained of elevated blood pressure, diabetes mellitus, his history of asbestosis, shortness of breath and enlarged heart. He noted that Baker complained that he was fatigue, experienced shortness of breath, had ill-defined pre-cordial pain and musculoskeletal discomfort in his neck and shoulders.[50]

The ALJ noted that also in August 2011, Baker was admitted to Charity Medical Center where he was admitted for three days due to cocaine-induced chest pain, even though Baker had denied use of cocaine. According to the ALJ, Baker initially showed elevated cardiac enzymes and was started on a calcium channel blocker. The ALJ noted that an ecocardiogram was performed and

---

[47]*Id.*

[48]*Id.*

[49]*Id.* at Tr. 21.

[50]*Id.* at Tr. 19.

showed good left ventricular function.[51]

After considering Baker's testimony, the ALJ found that his impairments could reasonably be expected to cause the symptoms but that his statements regarding the intensity, persistence and limiting effects of the symptoms were not credible.[52]  In reaching this conclusion, he compared Baker's testimony with the results of the RFC assessment.[53]

The Fifth Circuit has held that an ALJ has discretion to judge a claimant's credibility and must evaluate subjective complaints in light of the objective medical evidence on record.  *Foster v. Astrue*, 277 F. App'x 462, 465 (5th Cir. 2008) (citing *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985)).  Credibility determinations are generally entitled to great deference.  *Newton*, 209 F.3d at 459; *see Gonzales v. Astrue*, 231 F. App'x 322 (5th Cir. 2007) (holding that the ALJ's adverse credibility determination with respect to a claimant seeking social security disability benefits was supported by inconsistencies in claimant's testimony and between claimant's testimony and documentary evidence).

While credibility issues are for the Commissioner and not the courts to resolve,  *Martinez*, 64 F.3d at 172, a credibility determination based entirely on mistaken facts is not supported by substantial evidence and is subject to reversal by this Court.  *See Ripley*, 67 F.3d at 555 (noting that an ALJ's findings of fact must be supported by substantial evidence); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3) (same).

 Baker relies upon *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), to support his argument that the ALJ applied the wrong legal standard in evaluating his credibility. In *Bjornson*, the Seventh

---

[51]*Id.* at Tr. 20.

[52]*Id.* at Tr. 21.

[53]*Id.*

Circuit found that the boilerplate language used in the ALJ's opinion yielded no clue as to the weight the ALJ gave the claimant's testimony.  671 F.3d at 645-46. The boilerplate language in *Bjornson* is the same used here: "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 644. The Seventh Circuit held that the opinion lacked a description of specific evidence the ALJ considered in reaching that conclusion and improperly relied upon the claimant's ability to work, which was determined first and then used to determine the claimant's credibility. *Id.* at 645-46.

However, in reviewing the ALJ's credibility determination in regards to Baker, the ALJ stated "[a]fter careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however his statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[54]  He further went on in great length explaining the medical evidence he reviewed and why he found Baker less credible.  The Court therefore finds that the ALJ's credibility assessment is based on substantial evidence because he properly considered the evidence and did not just rely upon the RFC.

## C.    The ALJ Relied on Flawed Vocational Expert Testimony

Baker next contends that while the hypothetical the ALJ posed to the vocational expert ("VE") incorporated all the limitations he recognized, it cannot be said to incorporate all of Baker's limitations borne out by the record because the determination of his RFC was improper and did not

---

[54]*Id.* at Tr. 19.

include the weighing of medical opinions of record nor the proper evaluation of his credibility.[55] Baker also contends that the ALJ erred when he found that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), even though the DOT does not indicate whether any jobs permit working with a sit/stand option.[56]

The Commissioner contends that the hypothetical posed to the VE incorporated all limitations supported by the record, and that the ALJ gave plaintiff's counsel the opportunity to cross-examine the VE and to include any additional limitations.[57] The Commissioner contends that despite this offer from the ALJ, counsel for the plaintiff declined to cross examine the expert. Further, the Commissioner argues that plaintiff also does not suggest what additional limitations the ALJ should have included. The Commissioner also contends that contrary to Baker's assertion, there is no inconsistency with the VE's testimony and the DOT because the DOT is silent on the sit/stand option, which does not make the VE's testimony inconsistent.

Having determined that the ALJ did not error in either its credibility determination or in rendering its RFC finding, the VE's testimony in response to the hypothetical is sufficient to uphold the denial of benefits. Further, the record indicates that the ALJ provided counsel for the plaintiff an opportunity to cross examine the VE, however she chose not to do so. As a result, the ALJ's hypothetical, which both parties concede incorporates all of the limitations the ALJ found, is based on substantial evidence.

The final issue is whether there was a conflict between the VE's testimony and the DOT regarding Baker's ability to perform in a sit/stand job. Baker relies upon *Cunningham v. Astrue*, No.

---

[55] *See* Rec. Doc. No. 10, p. 13-14.

[56] *Id.* at 14.

[57] *See* Rec. Doc. No. 11, p. 11.

CV-09–624-TUC-HCE, 2011 WL 1119646 (D. Ariz. March 28, 2011), for the proposition that a remand is required where there is a conflict between the VE's testimony that the claimant could perform a sit or stand job and the fact that the DOT is silent on the issue.[58]

*Cunningham* involved a claimant who the ALJ found could only stand and walk one hour at a time for a total of four hours.  He noted that the full range of light level work requires the ability to stand or walk off and on for a total of approximately 6 hours of an 8 hour day.  The defendant in *Cunningham* pointed out that the VE accounted for the claimant's limitations on standing and walking by testifying that the identified occupations offered a sit/stand option.

The ALJ in this case presented the following hypothetical to the VE:

> [A]ssume that the claimant [] is limited to medium exertion, which is lift no more than 50 pounds occasionally, 25 pounds frequently . . . [no] limitations on standing, walking or sitting . . . [with] no climbing of ladders, ropes and scaffolds. Occasional climbing of ramps and stairs . . . [a]nd needs to avoid moderate . . . exposure to irritants, fumes, odors . . . [a]nd moderate exposure to chemicals. With those limitations, the claimant would not be able to perform past work, right? [59]

In response to the hypothetical, the VE testified that Baker could work as a dining room attendant such as a bus person, which is a medium level job (2,523 jobs in Louisiana, 216,526 jobs in U.S.), counter and rental clerk (324 jobs in Louisiana, 27,087 jobs in U.S.) and general office clerk (408 jobs in Louisiana, 32,014 jobs in U.S.).[60]  The ALJ then added a stand-walk option limiting him to standing/walking for only two hours at a time and sitting for one hour at a time for five minutes at a time and allowed to stretch and inquired about whether adding this restriction

---

[58]*See* Rec. Doc. No. 10, p. 15.

[59]*See* Rec. Doc. 9-2, Tr. 69-70.

[60]*Id.* at Tr. 70-71.

would eliminate the jobs he could do.[61]   The VE answered that it would not eliminate the jobs previously identified.[62]

   In *Cunningham,* the ALJ found that the claimant could perform light level work.  He also found that based upon the VE's testimony the available jobs provided for a sit/stand option.  In *Cunningham* the defendant asserted that because the DOT does not address sit/stand options, its reasonable for the ALJ to rely on the VE's testimony by using the VE's experience as a proper basis for deviating from the DOT. 2011 WL 1119646, at *7. However, since the ALJ did not explain his reliance on the VE's testimony, the court remanded for clarification in the record. *Id.* at *8.

   *Cunningham* however is distinguishable from the subject case because Baker has no limitations on standing, walking or sitting. It was the ALJ who inquired of the VE as to the impact that the additional limitation would have on Baker's ability to perform these jobs.  The VE testified that adding these limitations would not impact his ability to do these jobs.  He did not, like the VE in *Cunningham*, testify that these jobs necessarily provided a sit/stand option. Therefore, the ALJ's reliance upon the VE's testimony is based upon substantial evidence.

## IV.   Recommendation

   **IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Phillip Lex Baker's Disability Insurance Benefits and Supplemental Security Income Benefits be **AFFIRMED**.

   A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[61]*Id*. at Tr. 71.

[62]*Id*. at Tr. 72.

19

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[63]

New Orleans, Louisiana, this 5th day of January,  2015

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[63]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.